**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 03-2260**

—————————

JAMES WILLIAMS, JR.; JIMMY E. MCKELVY; JAMES
GILCHRIST; BOBBY LACY; ROBERT MCKITHEN, JR.;
KEVIN MCKIE; ROBERT COOKS, JR.; EDWARD N.
GRAY; NATHANIEL LOCKHART, on behalf of
themselves and all others similarly situated,

Plaintiffs - Appellants,

versus

WILLIAM J. HENDERSON, Postmaster General
United States Postal Service,

Defendant - Appellee,

and

RICHARD E. BARNHILL; DAVID O. BRANDON; CHARLES
J. CUTTER, II; EMMA OLIVER; PENNY JOYE; SONNY
POWELL; JOHN A. FRYE; JAMES STIH; RONALD
HOPSON; DAVID BLACK,

Defendants.

—————————

Appeal from the United States District Court for the District of
South Carolina, at Florence. Terry L. Wooten, District Judge.
(CA-99-552-4-25-BH)

—————————

Argued: February 3, 2005          Decided: April 27, 2005

—————————

Before WILKINSON, NIEMEYER, and WILLIAMS, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

**ARGUED:** Deborah Harrison Sheffield, Columbia, South Carolina, for Appellants.   David George Karro, UNITED STATES POSTAL SERVICE, Washington, D.C., for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Barbara Murcier Bowens, Assistant United States Attorney, Columbia, South Carolina; Lori J. Dym, Managing Counsel, UNITED STATES POSTAL SERVICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Nine African-American employees of the United States Postal Service ("USPS") commenced this class action against the Postmaster General of the USPS for denying them promotions because of their race, in violation of Title VII of the Civil Rights Act of 1964. On the USPS's motion, the district court ruled that this action could not proceed as a class action and, with respect to the individual plaintiffs' claims, granted summary judgment in favor of the USPS.

On appeal, we affirm. We agree with the district court's decision that this case should not proceed as a class action. And with respect to the individual defendants, we agree that none of the employees presented sufficient evidence from which a reasonable factfinder could conclude that the employee was denied a promotion on the basis of race. Finally, we agree that four of the employees' claims must be denied also because they failed to exhaust their administrative remedies.

I

Plaintiffs Williams, McKelvy, McKie, Cooks, Lacy, and Gray work in the maintenance craft in the Florence, South Carolina mail processing facility of the USPS.[1] Plaintiff Lockhart works as

---

[1] Although plaintiffs Gilchrist and McKithen, who also work in the maintenance craft at the Florence facility, filed notices of appeal, neither has prosecuted his appeal. Accordingly, we dismiss their appeals.

a mail distributor at the same facility. All plaintiffs claim that the USPS denied them promotions or discouraged them from seeking promotions because of their race.

The USPS promotion process in the maintenance craft is a highly formalized one. To obtain a promotion within that craft, a postal employee must enter the USPS's "Maintenance Selection System," which is comprised of seven steps: (1) announcement, (2) application, (3) record review, (4) review panel evaluation, (5) examination, (6) supervisor evaluation, and (7) results. While the first two steps might involve various circumstances, they generally entail the applicant's submission to the USPS of information pertaining to his or her qualifications for a desired position. During step (3), the USPS's National Test Administration Center ("NTAC") receives and processes the forms submitted by the applicant and any relevant records already contained in the USPS's database. Step (4) consists of an interview and record review by a three-member review panel, which assesses the applicant's qualifications for the job sought. Those qualifications are described by "KSAs" (knowledge, skills, and abilities) that the applicant must possess to be considered for the position. For each relevant KSA, the review panel assigns a score to the applicant, with 1 being the worst score and 5 being the best. During step (5), the applicant takes a written examination, administered by the NTAC for each relevant KSA. Step (6) requires the applicant's

-4-

current supervisor to submit a written evaluation for each of the relevant KSAs. The supervisor can either assign the applicant a performance level score of 1 to 5 or, if the supervisor has no basis on which to make an evaluation, the supervisor can give the applicant a "CE" score (standing for "cannot evaluate"). Finally, during step (7), the NTAC combines the applicant's scores from steps (4) through (6) and returns the results to the USPS office and the applicant. The applicant never sees how he or she scored on the individual components in the evaluation process. The applicant does, however, receive an overall score for each KSA, which is arrived at by combining the applicant's scores from the test, the panel review, and the supervisor evaluation in accordance with a formula. To be eligible for the desired position, the applicant must have achieved an overall passing score for each relevant KSA. If the applicant has failed one or more KSAs, he can seek to be re-evaluated only if he has received new experience or training that might make him more qualified.

Promotions in the distribution craft, as distinct from the maintenance craft, are handled through a less formalized procedure than those in the maintenance craft. The applicant must submit a job application listing his knowledge, skills, and abilities for the desired position, and the application is then forwarded to a review committee, which selects the most qualified applicants to interview for the position.

Plaintiffs Williams and McKelvy both applied in April 1996 for promotions within the maintenance craft to the position of general mechanic but were turned down when they failed to achieve passing scores on relevant KSAs. Both men allege that their non-passing KSAs were the result of discriminatory evaluations written by their supervisor, David Brandon. Specifically, both men received a CE score on the hand tools KSA from Brandon and ultimately received an overall "ineligible" rating for that KSA. Williams and McKelvy both allege that Brandon had previously observed them using hand tools and even had acknowledged their competency with hand tools in the past. They maintain that Brandon was motivated by racial animus to withhold a favorable evaluation. But James Mahoney, the manager of the NTAC, testified that both Williams and McKelvy received such low scores on the written examination for hand tools that they could not have passed the hand tools KSA even if they had received the highest supervisor review possible.

Plaintiff Cooks applied for a promotion within the maintenance craft in January 1994 but was deemed ineligible when he failed the KSAs for applied theory and test equipment. Cooks blames his overall ineligibility rating on the allegedly discriminatory evaluations he received from his supervisor, Richard Barnhill, and the review panel. Barnhill gave Cooks a CE on the applied theory KSA, and the review panel gave him a rating of 1 on

the test equipment KSA. According to NTAC manager Mahoney, Cooks's scores on the written examination for applied theory and test equipment were so low that Cooks could not have passed those KSAs even if he had received the highest possible supervisor and review panel scores.

Plaintiff Lacy alleges that he was denied a promotion because of Barnhill's discriminatory conduct. In particular, the USPS denied Lacy's request to be promoted to building equipment mechanic or area maintenance technician after he had failed nine relevant KSAs. Lacy claims that his overall non-passing scores on those KSAs resulted from the low scores he received from the review panel, which, according to Lacy, was conducted by Barnhill in a discriminatory manner. Notwithstanding Lacy's low panel review scores, however, NTAC manager Mahoney testified that Lacy's written test scores for two of the KSAs were so low that no review panel evaluation would have been high enough for him to have passed.

Plaintiff Gray never actually entered the maintenance selection system. He alleges that he was discouraged from applying for a promotion by his supervisor Barnhill.

Plaintiff McKie was denied a promotion in the maintenance craft, not because he failed a relevant KSA, but because he was passed over in favor of another qualified employee who was white. A contributing factor in the decision to promote the white employee was the difference between the supervisor evaluations each

applicant received from Barnhill. McKie alleges that because Barnhill was not familiar enough with the white applicant's abilities to have properly compared the two, the disparity in their applications must have been caused by racial animus.

Unlike the other plaintiffs who sought promotions in the maintenance craft, Lockhart sought a promotion in the mail distribution craft to the position of customer service supervisor. He applied to both the Taylor and Greenwood post offices. The review committee at the Taylor facility did not select Lockhart as a finalist, but he was granted an interview for the position at the Greenwood facility. Along with two other candidates, Lockhart was interviewed by postmaster Steve Glinski. During the interviews, Glinski asked 61 questions, and after scoring each applicant according to his or her responses, offered the position to a white applicant. Although Lockhart answered only 44.3% of the interview questions correctly, while the chosen candidate scored 96.7%, Lockhart claims that Glinski allowed racial animus to color his evaluation of the applicants' answers.

The plaintiffs commenced this action contending that the USPS discriminated against them in denying them promotions, in violation of Title VII. Their complaint requests both injunctive relief and monetary damages.

On cross-motions for summary judgment, the district court ruled that the case could not proceed as a class action because

the numerosity requirement of Rule 23 was not met, and, with respect to each individual plaintiff, the court granted summary judgment in favor of the USPS.

II

At the outset, we address the district court's ruling that this case could not proceed as a class action because the plaintiffs failed to demonstrate that the class was "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

The plaintiffs proposed to represent a class consisting of "[t]hose employees of the maintenance craft at the Florence Mail Processing Facility of African-American extraction who have applied for and been denied promotions based upon their race." The plaintiffs presented evidence that eight individuals fell within the class so defined. We conclude that the district court did not abuse its discretion in concluding that such a small number of potential class members was insufficient to maintain a class action under Federal Rule of Civil Procedure 23. See 7A Charles Alan Wright et al., Federal Practice and Procedure § 1762 (2d ed. 1986) (observing that, although there is no bright-line rule for how many members a class must have, many courts have found that classes with fewer than thirty members do not justify a class action); see also Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d

648, 653 (4th Cir. 1967) ("[U]nless an abuse is shown, the trial court's decision on this issue [of numerosity] is final").

### III

Next we address the USPS's contention that several plaintiffs failed to exhaust their administrative remedies. Plaintiffs Cooks, Gray, and McKie never filed complaints with the Equal Employment Opportunity Commission ("EEOC"), and although plaintiff Lacy filed a timely EEOC complaint, he failed to file a complaint in federal court within 90 days after the EEOC found no evidence of discrimination, as required by 42 U.S.C. § 2000e-16(c).

While the plaintiffs do not deny such failures, they contend that the USPS should be equitably estopped from asserting them as a defense. Specifically, the plaintiffs claim that the USPS's EEOC representative failed to tell three plaintiffs who did file EEOC complaints — Williams, McKelvy, and Gilchrist — that they could pursue a class complaint before the EEOC under 29 C.F.R. § 1614.204. The EEOC representative allegedly told them only that "each case had to be filed individually." But this fact, even if true, does not permit the plaintiffs to avoid the administrative process, and they offer no evidence that they were misinformed about or thwarted in filing individual EEOC complaints. Although a class complaint filed before the administrative agency might, in certain circumstances, have preserved their claims as class members, no one in this case made any effort to pursue a class

-10-

complaint before the EEOC, either timely or otherwise. Any misinformation provided by the EEOC would at most have tolled the time for filing a class complaint; it would not have excused the plaintiffs from having to exhaust their administrative remedies altogether. Moreover, they did not demonstrate any qualifications to pursue a class complaint before the EEOC. Without anything having been presented to the EEOC about a class proceeding, it would be inappropriate for us now to consider the issue as a basis to recognize the plaintiffs' claim that equitable estoppel should apply.

The plaintiffs argue that even if equitable estoppel does not save their claims, they can piggyback their unexhausted claims on the claims of the other plaintiffs who satisfied the exhaustion requirement — Williams, McKelvy, and Lockhart. While it is not clear that the plaintiffs who failed to exhaust their administrative remedies have claims that are similar enough to the claims of the three employees who exhausted their claims that they could invoke a single-filing rule, we conclude that any such rule would in any event conflict with the EEOC's procedure established for class complaints against the government and therefore decline to apply such a rule in the circumstances of this case. To allow plaintiffs who have not exhausted their administrative remedies to piggyback on EEOC complaints brought by others who are similarly situated would subvert the purpose behind the class administrative

procedure available to federal employees.  That procedure enables federal employees to preserve the claims of others while putting the government on notice that it will have to defend itself against a wider array of claims.  The single-filing rule that the plaintiffs urge us to apply fails to provide such notice and serves no purpose that the class administrative process does not serve equally well.

Finally, the plaintiffs contend that they need not exhaust their administrative remedies so long as a class representative in the federal action has exhausted his administrative remedies.  See Chisholm v. U.S. Postal Serv., 665 F.2d 482, 490 n.11 (4th Cir. 1981) (holding that plaintiffs who file timely individual EEOC complaints can subsequently file class action lawsuits on behalf of similarly situated plaintiffs who have not exhausted their administrative remedies).  Of course, that defense is not available if the federal action is not maintainable as a class action.  As we have pointed out, the district court did not abuse its discretion in holding that a purported class of eight members is not sufficiently large to invoke Federal Rule of Civil Procedure 23 authorizing class actions.

Accordingly, we affirm the district court's ruling granting summary judgment to the USPS on the claims of Cooks, Gray, McKie, and Lacy because they failed to exhaust their administrative remedies.

IV

Finally, we address the plaintiffs' challenges to the district court's rulings on the merits. The district court concluded that none of the plaintiffs, including those who failed to exhaust their administrative remedies, presented sufficient evidence from which a reasonable factfinder could conclude that they had been discriminated against on the basis of their race. We agree.

Section 717 of Title VII of the Civil Rights Act of 1964 provides that "[a]ll personnel actions affecting employees . . . in the United States Postal Service . . . shall be made free from any discrimination based on race." 42 U.S.C. § 2000e-16(a). Relying on this section to assert disparate treatment claims, the plaintiffs alleged that the USPS failed to promote them because of their race. In response to the USPS's motion for summary judgment, they invoked the McDonnell Douglas framework for determining discrimination.[2] Under that approach, each plaintiff must demonstrate (1) that he is a member of a protected group; (2) that he applied for the position in question; (3) that he was qualified for the position sought; and (4) that he was rejected for the

---

[2] Part of the plaintiffs' complaint could also be understood to be alleging a "pattern or practice" of discrimination. Because pattern or practice claims can be asserted only in class actions, see Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999), we do not address that part of their complaint in view of our ruling made above on the class action status of this case.

position in favor of someone not a member of the protected group in circumstances giving rise to an inference of unlawful discrimination. See Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999). Once the plaintiff has satisfied those criteria and thereby established a prima facie case, a presumption of discrimination arises, and "the burden of production shifts to the employer to rebut the plaintiff's prima facie case by articulating a legitimate, non-discriminatory reason for the adverse employment action." Id. If the employer produces evidence of a non-discriminatory reason for the promotion decision, then the presumption of discrimination "drops from the case," and the plaintiff bears the "ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10, 256 (1981). With this legal framework, we now turn to the plaintiffs' claims.

A. Williams, McKelvy, Cooks, Lacy

Plaintiffs Williams, McKelvy, Cooks, and Lacy failed to establish that they were qualified for the positions they sought, the third element of a prima facie claim of discrimination. Specifically, they failed to introduce evidence that, but for the allegedly discriminatory reviews given by their supervisors or the review panel, they would have met all of the KSAs required for the

-14-

promotions they sought. The NTAC manager testified that each of these plaintiffs scored so low on an examination for at least one necessary KSA that he could not have passed the KSA even had he received the highest supervisor or panel review possible. Because the USPS uses the KSAs to determine whether candidates are qualified for particular positions, the fact that the plaintiffs would not have passed the necessary KSAs, even in the absence of any discriminatory reviews, establishes that they were not qualified for the positions for which they applied.

Attempting to prove that the KSA examination procedure itself was a pretext for discrimination, the plaintiffs suggest that white employees might have had access to testing materials prior to taking the exams. They also attempt to undermine the credibility of NTAC manager Mahoney's testimony that the plaintiffs' exam scores were so low that they could not have passed the necessary KSAs by asserting that the scoring process was "shrouded in secrecy." These arguments are, however, mere speculation and do not create a triable question of fact. See Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion").

## B. Gray

Plaintiff Gray failed to establish that he applied for the position in question, the second element of a prima facie case

of discrimination.  In an unsuccessful attempt to overcome that failure, Gray alleges that he intended to apply for a level-5 maintenance position in March 1998 but changed his mind when his supervisor, Richard Barnhill, told him that no level-5 positions would be open in the near future.  Not only does Gray fail to offer any proof that Barnhill's statement was untrue, but even if untrue, he fails to point to any evidence that Barnhill intentionally misled Gray because of his race.  Gray simply has not advanced evidence necessary to support a prima facie case for Title VII discrimination.

## C.  McKie and Lockhart

While both McKie and Lockhart may have established a prima facie case under the McDonnell Douglas framework, neither has presented sufficient evidence to rebut the USPS's proof that it had a nondiscriminatory reason for its decision not to promote him.

Specifically, the USPS asserts that McKie was passed over in favor of a white applicant because Barnhill's evaluation of the two applicants reflected the fact that the white applicant had background experience in the electronics field, which made him a better candidate for the position.  While McKie notes that Barnhill did not have much of an opportunity to observe either applicant on the job, McKie has not presented any evidence that it was against USPS policy for supervisors to take into account an applicant's background experience when evaluating him.  Even though McKie may

-16-

have possessed the skills <u>necessary</u> for the position, that fact does not undermine the USPS's conclusion that the other applicant possessed <u>superior</u> skills.

Similarly, the USPS met its burden of producing evidence that Lockhart was denied supervisor positions at the Greenwood and Taylor facilities for legitimate reasons. Glinski, the postmaster responsible for making the final promotion decision at the Greenwood facility, testified that he chose the white candidate over Lockhart because the white employee performed better during his interview. To support his claim that this reason for denying him the position at the Greenwood facility was pretextual, Lockhart points to the subjective nature of some of the interview questions and notes that Glinski did not actually record the candidates' answers. But such evidence, even when combined with Lockhart's prima facie case, would not enable a reasonable factfinder to conclude that Lockhart was discriminated against. First, the proportion of subjective questions asked during the interviews was too small to account for the vast discrepancy between the interview scores of Lockhart and the other applicant — 44.3% correct versus 96.7% correct. Second, the fact that Glinski did not specifically record the candidates' interview answers does not tend to show that he lied about their performances or that he ultimately chose the white candidate over Lockhart because of Lockhart's race.

Explaining the decision not to interview Lockhart for the position at the Taylor facility, one of the review panel members testified that, based on the candidates' applications, Lockhart was less qualified than five other applicants.  Lockhart responded to that evidence by claiming that he had a more extensive educational background than any of the candidates that were chosen to be interviewed for the position.  But Lockhart failed to rebut the USPS's evidence that the interviews were granted, not on the basis of the candidates' educational achievements, but on the basis of their answers to questions on their applications that asked the applicants to describe situations demonstrating their knowledge and abilities in particular skills areas.

In short, neither McKie nor Lockhart introduced sufficient evidence to create a factual question as to whether he was denied a promotion by reason of his race.

V

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED