**Kathryn L. PATTON, et al.**

v.

**Harold BROWN, et al.**

**Civ. A. No. 79–1212.**

United States District Court,
E. D. Pennsylvania.

Sept. 3, 1982.

Michael K. Simon, Sidkoff, Pincas, Greenberg & Green, Philadelphia, Pa., for plaintiff.

Joan K. Garner, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

GILES, District Judge.

In this race discrimination suit brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 (1976 and Supp. IV 1980), plaintiff, a black female employed at the Philadelphia Defense Industrial Supply Center (DISC), has moved for certification of a class consisting of all past, present and future black employees and applicants for employment at DISC, as well as all blacks who would have applied but for the defendants' allegedly discriminatory practices. Jurisdiction is properly based upon 42 U.S.C. § 2000e–5(f)(3) (1976).

Defendants, Harold Brown, former Secretary of Defense, and Gerald J. Post, Director of Defense Logistics Agency, oppose the motion asserting that a class action is barred since plaintiff did not exhaust class complaint remedies at the administrative level. Alternatively, defendants contend that the prerequisites to maintaining a class action under Federal Rule of Civil Proce-

---

dure 23(a) have not been met. Because I find that the failure to exhaust administrative remedies is fatal to the motion, I do not reach the alternative ground advanced for the motion's denial.

### Background

Prior to September 28, 1975, plaintiff was employed as a GS-5 at the Marine Corps Supply Activity in Philadelphia. On that date, the agency closed and she received a lateral transfer to DISC, a field activity of the Defense Logistics Agency. At DISC she filled a clerk position in the Directorate of Engineering and Standardization (DISC-E), a newly formed department. In October, 1977 a GS-7 position for processing unit supervisor, a newly classified job, became available. Plaintiff and others applied for it. On November 28, 1977, plaintiff was notified that a white female counterpart had been awarded the job. Under the regulations applicable at the time, she immediately initiated an individual race discrimination complaint with her EEO counselor claiming that the white employee had been given more relevant on-the-job training and that plaintiff had been deprived of training opportunity. This individual complaint formed the basis of the formal charge filed March 17, 1978 which essentially asserted disparate treatment. She complained in a later affidavit submitted in support of the charge that black females as a group were underrepresented numerically in DISC-E, were not specifically covered in the DISC Affirmative Action Plan and that certain supervisors and senior personnel were prejudiced and held discriminatory attitudes towards black individuals and black women in particular. In this affidavit she sought, in addition to her request for back pay, training and promotion, a directive that discriminatory practices against fe-

males be prohibited and that action be taken to correct underrepresentation of black females in the work force of DISC-E.

Ultimately, the Agency found no credible evidence to support plaintiff's allegations that she was denied a promotion due to race. However, the agency determined that she had not received adequate training and therefore found her entitled to two priority considerations for promotion to a GS-7 position within DISC. The Agency decision was received by plaintiff and her counsel on March 5, 1979. Plaintiff then filed this complaint, both individually and on behalf of a class, alleging racial employment discrimination against blacks.

There is no question on this record that plaintiff properly filed and prosecuted an individual grievance on her own behalf. However, it is equally clear that she never filed a class claim at the agency level. Thus, the issue squarely presented is whether a plaintiff who files a Title VII class action complaint has exhausted her administrative remedies by filing an individual, rather than a class complaint of discrimination at the agency level.

Section 717(c) of the Civil Rights Act provides the exclusive judicial remedy for federal employees aggrieved by discriminatory employment practices. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). This section also imposes certain preconditions to bringing such a civil action, including initial recourse to the agency that has allegedly discriminated against plaintiff. *Id.* at 832, 96 S.Ct. at 1967.[1]

Regulations promulgated pursuant to section 717(b) of the Act provide procedures for processing class action complaints of discrimination. 5 C.F.R. § 713.601–.643 (1978), now 29 C.F.R. §§ 1613.601–.643

---

1. Prior to filing suit in a federal district, an aggrieved employee must seek relief in the agency which has allegedly discriminated against him. He may then seek further administrative review before the Equal Employment Opportunity Commission ("EEOC"). Alternatively, he may file suit in the federal district court within thirty days of receipt of notice of the agency's final decision without appealing to

the EEOC. If he does appeal to the EEOC, he may file suit within thirty days of its final decision. In either case, the complainant may file a civil action, if, after 180 days from the filing of the charge or appeal, neither the agency nor the EEOC has taken final action. *See* 42 U.S.C. § 2000e–16(c). *See also Brown v. Gen. Servs. Admin.*, 425 U.S. at 832, 96 S.Ct. at 1967.

(1981). These procedures differ markedly from those which govern the filing of individual complaints. 5 C.F.R. §§ 713.-201–.283 (1978), now 29 C.F.R. §§ 1613.-201–.283 (1981).[2]

For example, in filing a class complaint, the charging party must declare that she purports to be the representative of a specific class and must specify that the class meets the requirements of numerosity, typicality and commonality and that she is an adequate class representative. 29 C.F.R. § 1613.601. The complaint must specify and describe in detail the agency personnel policy or practice giving rise to the complaint. 29 C.F.R. § 1613.603. The complaint is reviewed by a complaints examiner to ascertain if it meets the class complaint prerequisites and makes a recommendation to the agency to accept, reject or cancel the complaint. § 1613.604. If the complaint is accepted, the agency must notify all class members of the existence of the complaint, their right to opt out and the method of doing so, and must give an explanation of the binding nature of the final decision or resolution of the complaint. § 1613.605. Thereafter, investigation is undertaken by an appointed agency representative at an agency level commensurate with the class complaint accepted. § 1613.608. There are provisions for resolution of the complaint during the investigative process with notice to the class. § 1613.609. If not resolved, a hearing is held on the complaint and a report of findings and recommendation is made to the agency which shall issue a decision. § 1613.610–611. The class receives notification of the decision and of the required corrective action, if any. The affected agency must attempt to eliminate any personnel practice or policy found to be discriminatory and provide individual corrective action for all affected class members. § 1613.614. Aggrieved class members have a right to appeal to the Office of Review and Appeals. § 1613.631.

An agent is authorized to file a class action in federal court only within thirty calendar days of receipt of the decision of the Office of Review and Appeals or after 180 calendar days after the appeal is lodged with that review body. § 1613.641. Importantly, the regulations specify that the decision of an agency shall be final only when the agency makes a determination on all of the issues in the complaint, including whether attorney's fees and costs are to be awarded and, if so, the amount has been determined under the regulations. § 1613.-641.

Defendants argue that these regulations constitute a carefully considered scheme for the processing of class complaints, with which plaintiff must comply before she is entitled to bring this class action. While they concede that not all of the class members need exhaust their administrative remedies, *Eastland v. TVA*, 553 F.2d 364 (5th Cir.) *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), they contend that the named plaintiff, at least, must have used the class action administrative process. I agree. In *James v. Rumsfeld*, 580 F.2d 224 (6th Cir. 1978) the Sixth Circuit first addressed the exhaustion issue in *dictum* and concluded that in class actions, the "preferred administrative route for meeting § 717(c)'s exhaustion requirement is now the filing of a class complaint initially at the agency level." *Id.* at 228, (footnote omitted). The court further sug-

2. Originally promulgated by the Civil Service Commission pursuant to its statutory authority under section 717(b) to "issue such ... regulations ... as it deems necessary ... to carry out its responsibilities under [section 717]," 42 U.S.C. §§ 2000e–16(b) (1976), the regulations for class complaints were codified at 5 C.F.R. § 713.601 .643 effective April 18, 1977. These regulations were established in direct response to judicial criticism that there was no regulatory provision for maintaining class complaints advanced in the context of individual claims of discrimination filed under 5 C.F.R. § 713.-201–.283, *Barrett v. United States Civil Serv. Comm.*, 69 FRD 544 (D.D.C.1975).

The regulations codified at 5 C.F.R. §§ 713.-201–.283 (1978) have been recodified without substantial modification at 29 C.F.R. §§ 1613.-201–.283 (1981), as a result of the transfer of federal government equal opportunity enforcement, to the EEOC. Unless otherwise indicated, references throughout the remainder of this opinion are to the current regulations.

gested that litigants should avoid uncertainty by resorting to the administrative class complaint procedures prior to filing in federal district court. *Id.* at 228 n.5.

There is authority since *Rumsfeld, albeit* scant, which holds that exhaustion of class action administrative remedies is a prerequisite to maintaining a class action in federal court and that administratively processing an individual complaint does not satisfy that prerequisite. *Johnson v. Bond*, 94 F.R.D. 125 (N.D.Ill.1982); *Thomas v. United States Postal Service*, 27 EPD ¶ 32,272 (N.D.Cal.1981). I find this authority persuasive. Pursuant to statutory authority, regulations were enacted which detail procedures to be followed by would-be class representatives in complying with section 717(c)'s exhaustion requirement. An essential purpose of Title VII is to utilize intra-agency methods of resolution before resorting to the federal courts. Such preferred methods include class scope investigation and conciliation. Section 717 "does not contemplate merely judicial relief. Rather it provides for a careful blend of administrative and judicial enforcement powers." *Brown v. GSA*, 425 U.S. at 833, 96 S.Ct. at 1968.

 The policy considerations inherent in the exhaustion doctrine have particular applicability here. Although plaintiff has sought administrative resolution of her individual claim, the Agency has not been given the opportunity to discover and correct discriminatory practices that may amount to class-wide discrimination. To allow plaintiff to maintain her class action without the benefit of prior administrative investigation, in complete disregard of the regulations, certainly does not conform to Congress' expectation that agencies should have initial adjudicatory authority for remedying discrimination charges under Title VII. While I am well aware that a court should not erect technical, procedural barriers to suit under Title VII, *Love v. Pullman Co.*, 404 U.S. 522, 526–27, 92 S.Ct. 616, 618–19, 30 L.Ed.2d 679 (1972), there is a countervailing interest here in encouraging agency resolution of Title VII disputes. This interest weighs in favor of requiring compliance with procedures designed to achieve informal resolution to the benefit of the class members as well as the agency.

Plaintiff argues that if she is unable to maintain a class action in federal court, though having exhausted her individual administrative remedies on a race complaint, she will be treated differently from private sector Title VII plaintiffs who do not have to allege specifically or exhaust administratively as to class allegations, citing *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (federal employees have the same right of trial de novo after exhaustion of administrative proceedings as do private sector employees) and *Eastland v. TVA*, 553 F.2d 364 (5th Cir.) *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977) (exhaustion as to all class members not required as to administrative complaints pending as of the March 24, 1972 Amendments to Title VII which afforded coverage to federal employees). Plaintiff's contention is without merit. First, there is no similar administrative regulation applicable to the private sector; second, Title VII specifically authorizes the promulgation of the existing regulations by the Civil Service Commission to effectuate the purposes of the Act; and third, judicial recognition of the same right to a trial *de novo* does not in any way relieve a federal employee of exhausting those administrative remedies which are absolute preconditions to suit in federal court.

Until very recently the failure to exhaust administrative remedies under section 717(c) may have necessitated dismissal of the complaint, since the prerequisites of section 717(c) were considered jurisdictional in nature. *See, e.g., Gaballah v. Johnson*, 629 F.2d 1191, 1198 (7th Cir. 1980). However, in *Zipes v. Transworld Airlines, Inc.*, —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that the filing of timely charges with the EEOC under 42 U.S.C. § 2000e–5 is not jurisdictional, but in the nature of a statute of limitations, subject to equitable modification. The logic of *Zipes* applies equally to

the analogous provisions of 42 U.S.C. § 2000e–16(c). *Beckler v. Kreps,* 541 F.Supp. 1311, 1315 (E.D.Pa.1982); *Johnson v. Bond,* 94 F.R.D. at 129. Even viewing the class action requirements in this case as part of the procedural apparatus of § 717(c), and applying the logic of *Zipes* broadly so that the requirements are treated as non-jurisdictional preconditions subject to equitable modification, I see no basis on this record for excusing plaintiff from compliance with the class complaint procedures.

This is not a case in which the agency failed to apprise plaintiff of these procedures. As soon as they became effective the procedures were outlined for all DISC–E employees in its monthly newsletter. Further, plaintiff was represented by counsel during the administrative proceeding. At the time plaintiff filed her formal agency complaint, the administrative regulations covering the review, processing and conciliation of class complaints were firmly in place. Plaintiff, through her counsel, had a clear obligation to comply with these procedures.

Plaintiff argues that her affidavit in support of her amended complaint had class complaint overtones since it referred to patterns of discrimination against black females at DISC–E and requested relief on their behalf. Moreover, several of the investigatory reports filed at the agency level referred to patterns of discrimination. Therefore, the argument goes, defendants were on notice of the class claims and they should be estopped from requiring compliance with procedural technicalities.

I find this argument unpersuasive. Plaintiff's formal agency complaint was undeniably commenced as an individual action and was continued as such thereafter with the aid of counsel from shortly after filing.

It was filed and processed pursuant to regulations covering individual charges. 5 C.F.R. § 713.201–.283 (1978) now 29 C.F.R. § 1613.201–.283 (1981). Its character did not change by virtue of the supportive affidavit filed several months later. The affidavit did not allege any specific policy or employment practice which affected blacks as a whole. The charge of hostile attitudes by some supervisors was not specific as to work area, was not alleged to affect blacks as a group in promotion or training opportunities or hiring, and was not alleged to be part of agency policy or practice. The claim of underrepresentation among black females in an affirmative action plan was not tantamount to a claim on behalf of a class of blacks, in general, or a discriminatory employment policy.

Despite plaintiff's present efforts to assert that her administrative complaint was initiated on behalf of a class it is evident that it was filed as an individual complaint. Her claim for injunctive relief does not alter the essential character of the individual charge nor transform it into a class charge. Had plaintiff through her attorney desired to represent a class, there was a clear obligation to file a formal complaint pursuant to 5 CFR § 713.601–.643 (1978), now 16 CFR § 1613.601–.643 (1981), § 1613.602 *et. seq.* Failure to do so compels the conclusion that there was never an undertaking to represent a class in the administrative proceedings below.

For these reasons, the motion for class certification must be denied.