# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 16, 2014       Decided September 5, 2014

No. 12-5306

ANN J. BARKLEY, ET AL.,
APPELLANTS

v.

UNITED STATES MARSHALS SERVICE, BY AND THROUGH
DIRECTOR STACIA HYLTON AND ANY SUCCESSOR, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:02-cv-01484)

*Phoebe L. Deak* argued the cause for appellants. With her on the brief was *John A. Tucker*.

*Sydney A. Foster*, Attorney, U.S. Department of Justice, argued the cause for appellees United States Marshals Service and Stacia A. Hylton. On the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Marleigh D. Dover* and *Stephanie R. Marcus*, Attorneys.

*Michelle E. Shivers* was on the brief for appellee Akal Security, Inc.

*Kurt N. Peterson* entered an appearance.

Before: ROGERS, SRINIVASAN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:  The United States Marshals Service contracts with private security companies for the provision of security officers in the federal courts.  The Marshals Service requires officers to undergo annual medical examinations to assure their continued medical fitness for the position.  A government physician reviews an officer's annual examination to determine the officer's medical status.  If the physician initially determines the officer to be medically disqualified, the officer is given the opportunity to submit additional medical information.  If the additional information fails to demonstrate the officer's medical qualification, the officer may no longer work under his security company's federal contract as a court security officer.

Former officers who had been medically disqualified from serving as federal court security officers brought an action against the Marshals Service.  They alleged that the procedures culminating in their dismissals failed to satisfy the Due Process Clause, and that their dismissals had been motivated by discrimination in violation of the Rehabilitation Act.  The officers also sued the private security companies that employed them under the Americans with Disabilities Act.

The district court granted summary judgment to the Marshals Service on the due process claim, finding that the process afforded to the officers satisfied constitutional requirements.  The court rejected the Rehabilitation Act

claims of most of the plaintiffs on the ground that they had failed to exhaust administrative remedies. The court also denied the plaintiffs leave to amend their complaint to add claims under the Rehabilitation Act and Americans with Disabilities Act for a number of recently terminated officers. We affirm the grant of summary judgment on the due process claims and the dismissal of the Rehabilitation Act claims for failure to exhaust, but reverse the denial of leave to amend the complaint.

I.

A.

The United States Marshals Service bears responsibility to provide security for the federal courts. 28 U.S.C. § 566(a). In fulfilling that duty, the Marshals Service contracts with private security companies to supply court security officers for federal courthouses. Although the Marshals Service specifies the standards and qualifications for the officers, they are employees of the private security companies. Under the agreement between the Marshals Service and the security companies, "[a]ny employee provided by the Contractor that fails to meet the requirements of the Contract . . . may be removed from performing services for the Government under [the] Contract upon written request of [the Marshals Service officer overseeing the contract]." Supp. App. 27-28.

In 1997, a committee of the U.S. Judicial Conference expressed concerns about the ability of court security officers to respond to security threats. The Judicial Conference, in conjunction with the Marshals Service, asked the U.S. Public Health Service to study the medical standards for the officers. The Marshals Service implemented a number of recommendations made by the U.S. Public Health Service.

One new procedure implemented by the Marshals Service requires each officer to undergo an annual medical examination to assure the officer's medical qualification for the position. The initial medical examination is conducted by a physician selected by the officer's private security company and approved by the office of Federal Occupational Health, a component of the U.S. Public Health Service. That examination produces a medical file that is provided to the private security company and forwarded to the Marshals Service. The Marshals Service, in turn, sends the file to the office of Federal Occupational Health for review by a government physician with experience in law enforcement-related occupational medicine. If the government physician determines that the officer is medically qualified, the process ends and the officer continues in his position.

If the government physician finds either that she lacks adequate information with which to make an assessment or that the officer may have a disqualifying condition, the physician requests additional information (unless an emergency situation requires immediate termination). The physician sends a medical review form to the Marshals Service, which then submits the form to the officer's security company. The form is addressed to the officer. It explains the concerns of the physician and describes the additional information needed. Ordinarily, the officer can obtain that information from a personal physician. The Marshals Service gives the security company thirty days to respond. If the Marshals Service does not receive a timely response, it can send an additional request or can order the security company to remove the officer from her position as a court security officer under the government contract. If, after receiving additional information, the government physician concludes that the officer is medically disqualified, the Marshals Service sends a disqualification letter to the company. The company

must then remove the employee as a court security officer under the contract (but can reassign the employee elsewhere).

B.

The plaintiffs are former federal court security officers who had been removed from their service under government contracts after the Marshals Service determined they were medically disqualified. Fifty-four former officers, and their union, the United Government Security Officers of America International Union, sued the Marshals Service under the Due Process Clause. They challenged the procedures by which the officers were deemed medically disqualified to continue their service under the government contracts. The individual plaintiffs also raised claims under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, against the Marshals Service, and claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, against three private security companies that employed them. The plaintiffs also sought certification of a class in connection with the Rehabilitation Act and ADA claims.

In September 2006, the district court determined that only four of the plaintiffs could proceed with Rehabilitation Act claims against the Marshals Service. *See Int'l Union v. Clark*, No. 02-1484, 2006 WL 2598046, at *12 (D.D.C. Sept. 11, 2006). Finding that only five officers had properly exhausted administrative remedies (and that one of those five officers faced a separate bar against going forward under res judicata principles), the district court granted judgment on the pleadings to the Marshals Service on the Rehabilitation Act claims of all plaintiffs except the four who had exhausted administrative remedies. *Id.* at *12, n.19. The court relied on this court's decision in *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006), which held that there is no jurisdiction over

the Rehabilitation Act claims of individuals who failed to file any administrative complaint. *See Clark*, 2006 WL 2598046, at \*10.

In a subsequent order, the district court denied the plaintiffs' motion for class certification on the Rehabilitation Act claims. The court explained that, after it dismissed the bulk of the Rehabilitation Act claims for failure to exhaust administrative remedies, the class was not "so numerous as to make joinder impracticable." *Clark*, No. 02-1484, 2006 WL 2687005, at \*5-\*6 (D.D.C. Sept. 12, 2006). In addition, the named representatives could not adequately represent the class because they had failed to exhaust the special administrative procedures for class claims. *See id.* at \*6-\*7.

In October 2006, the plaintiffs sought leave to file a fifth amended complaint, which would add twelve former officers as plaintiffs along with any future terminated officers. The newly added officers, according to the motion, had "the same claims as Plaintiffs against Defendant [Marshals Service] for the violation of their Fifth Amendment rights to due process." Pls.' Mot. for Leave 2. The proposed complaint attached to the motion also added Rehabilitation Act and ADA claims by the new officers. The district court granted leave to amend the complaint. But in response to a motion for clarification, the court barred the new plaintiffs from asserting claims under the Rehabilitation Act or ADA. *Clark*, No. 02-1484, slip op. at 3 (D.D.C. Sept. 20, 2007). In denying reconsideration, the court explained that the plaintiffs' initial motion explicitly requested the addition only of claims under the Due Process Clause. *Clark*, No. 02-1484, slip op. at 2-3 (D.D.C. Jan. 22, 2009).

In 2008, the plaintiffs and the Marshals Service filed cross-motions for summary judgment with regard to the due

process claims. The district court granted summary judgment to the Marshals Service. The court concluded that the officers held a constitutionally protected property interest in their employment, but that they had received constitutionally adequate process before being deprived of that interest. *Clark*, 706 F. Supp. 2d 59, 65-71 (D.D.C. 2010).

Another set of former officers brought parallel claims against the same parties in a separate case, *Neal v. Reyna*, No. 05-07 (D.D.C. filed Jan. 4, 2005). The district court consolidated the two cases. Consistent with its prior rulings, the court determined that the *Neal* plaintiffs who had failed to exhaust administrative remedies could not proceed on their Rehabilitation Act claims, and the court granted summary judgment to the Marshals Service on the due process claims. *See Clark*, 878 F. Supp. 2d 127, 137 (D.D.C. 2012); *Clark*, 704 F. Supp. 2d 54, 63 (D.D.C. 2010).

The plaintiffs now appeal (i) the district court's grant of summary judgment against them on their due process claims, (ii) the rejection of their Rehabilitation Act claims for failure to exhaust administrative remedies, and (iii) the denial of leave to add Rehabilitation Act and ADA claims in the fifth amended complaint. We discuss each of those issues in turn.

II.

In examining the plaintiffs' claim of a violation of procedural due process, we apply "a familiar two-part inquiry": we "determine whether the plaintiffs were deprived of a protected interest, and, if so, whether they received the process they were due." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 56 F.3d 1469, 1471 (D.C. Cir. 1995) (internal quotation marks omitted). We need not resolve whether the

plaintiffs possessed a "protected interest" in their continued service under a federal government contract because, even if so, the Marshals Service's medical review procedures afforded the officers "the process they were due." *Id.*

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Here, both the notice and the opportunity for hearing given to the plaintiffs met the requirements of the Due Process Clause.

## A.

To satisfy due process, notice must be "reasonably calculated to reach interested parties." *Mullane*, 339 U.S. at 318. Here, when a government physician reviewing a court security officer's file identified a need for further medical information, the physician requested the information through a medical review form. The Marshals Service sent the form to the security company employing the officer. If an officer failed to respond to the first request, moreover, a second form might be sent. Forms were sent to an officer's employer but were addressed to the individual officer, and the plaintiffs identify no record evidence of any officer who failed at least to receive timely notice of the need to submit additional medical documentation. Indeed, the Marshals Service might well have reasonably viewed a response to be more likely if the officer's employer was made party to the interaction: the companies' contracts with the Marshals Service obligated them to "ensure that [officers] comply with the [Marshals Service's] request for follow-up or clarifying information regarding treatment measures." Supp. App. 24. Sending a

form addressed to the officer through the officer's employer, with the employer in turn contractually bound to assure a response by its employee, readily constitutes notice "reasonably certain to inform those affected." *Dusenbery v. United States*, 534 U.S. 161, 169 (2002) (quoting *Mullane*, 339 U.S. at 315).

The medical review form also "provided an accurate picture of what was at stake," *Brown v. Plaut*, 131 F.3d 163, 172 (D.C. Cir. 1997), and adequately explained how an officer should respond.  The form stated that the officer "has medical findings which may hinder safe and efficient performance of essential job functions" and asked for "the following detailed or diagnostic medical information." *See, e.g.*, J.A. 346.  It then explained that, "if further information is not provided, a determination will be made based on available medical information." *Id.*  Officers reviewing the form would have understood the significance of the matter, and that, because the inquiry concerned their "performance of essential job functions," their continued employment was in question. *See id.*  The form also adequately communicated the information requested from the officer.  As an example, one officer was asked to have "[his] treating physician provide a report regarding [his] diabetes control," including "[his] current diabetic condition and what [was] being done to manage [his] diabetes," a "history of all medications, including type and dosage adjustments over the past 2 years," a "copy of all labs taken over the past 2 years," and "any evidence of medical complications . . . and hypoglycemic episodes in the past 2 years." *See id.*  As that example illustrates, the forms supplied "notice . . . of such nature as reasonably to convey the required information." *Mullane*, 339 U.S. at 314.

10

B.

We consider the adequacy of the officers' opportunity to be heard through the lens of the three factors set out in *Mathews v. Eldridge*: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). The Third Circuit, reviewing a substantially similar claim under the *Mathews* factors, held that the Marshals Service's medical review procedures afforded officers constitutionally sufficient process. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 178-79 (3d Cir. 2007). We reach the same conclusion.

A security officer has a substantial interest in maintaining his or her employment*, see Loudermill*, 470 U.S. at 543, and we assume for purposes of this decision that the interest extends to maintaining service as a court security officer under a federal government contract. "[D]ue process normally requires pre-termination proceedings of some kind prior to the discharge of employees with constitutionally protected interests in their jobs." *Washington Teachers' Union Local No. 6 v. Bd. of Educ.*, 109 F.3d 774, 780 (D.C. Cir. 1997). Here, the officers were accorded "pre-termination proceedings of some kind." Those proceedings adequately limited the risk of an erroneous decision while vindicating the government's weighty interests in assuring courthouse security.

Before an officer could be terminated for reasons of medical fitness, the officer was given the opportunity to supply additional medical information responding to the specific concerns of the physician charged with making the final decision. Contrary to the plaintiffs' contention, there was no need to give an officer an oral hearing as well. Unlike circumstances in which questions of credibility and veracity are centrally in issue, in which event an oral hearing can be especially useful, the assessment of an officer's medical qualifications suitably turns on an experienced physician's review of written medical records. *See Mathews*, 424 U.S. at 344-45 (noting "reliability and probative worth of written medical reports," and observing that "potential value of an . . . oral presentation to the decisionmaker[] is substantially less in this context") (internal quotation marks omitted).

The government physicians responsible for the final determination, moreover, serve as neutral decisionmakers. *Cf. Parham v. J.R.*, 442 U.S. 584, 607 (1979) (concluding that "staff physician" is neutral decisionmaker in connection with voluntary admission of children to mental hospitals "so long as he or she is free to evaluate independently" the "mental and emotional condition and need for treatment"). A government physician independently reviews each officer's medical records and reaches an individualized determination. The plaintiffs point to no evidence showing that the deciding physician is biased or non-independent. Instead, relying on our decision in *Propert v. District of Columbia*, 948 F.2d 1327 (D.C. Cir. 1991), the plaintiffs contend that officers are constitutionally entitled to the review of a second, neutral decisionmaker. In *Propert*, a police officer determined whether a car had been abandoned as "junk"— allowing it to be towed and destroyed—by assessing whether "you [would] take your mother to church in it." *Id.* at 1333 (alteration in original). The car owner could attempt to appeal the "junk"

assessment only to the same officer who had made the original assessment. We required a separate decisionmaker in part because the officer's standard was "particularly subjective." *See id*. No comparable subjectivity inheres in the assessment of medical qualifications at issue here so as to require the review of a second medical professional, particularly when taking into account the government's interests in prompt and efficient determinations affecting courthouse security.

The plaintiffs highlight the case of one former officer, Felipe Jorge-Rodriguez, in an effort to demonstrate that the Marshal Service's procedures produce erroneous decisions. "[P]rocedural due process rules," however, "are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." *Mathews*, 424 U.S. at 344. In any event, the record shows no deficiency in the process resulting in Officer Jorge-Rodriguez's termination. He received two notices requesting additional medical information. He responded to the second, but the government physician made a determination of medical disqualification based on the information then available, resulting in Officer Jorge-Rodriguez's dismissal. The plaintiffs now assert that, two weeks after his dismissal, Officer Jorge-Rodriguez submitted additional medical information disproving one of the bases for his disqualification. But even accepting the plaintiffs' account of the additional information's probative value, the failure to submit that information in a timely fashion suggests an inadequacy in the individual's response, not an inadequacy in the Marshals Service's procedures. Those procedures satisfied the Due Process Clause.

III.

We next consider the district court's rejection of the claims under the Rehabilitation Act of those plaintiffs who failed properly to exhaust administrative remedies. The Act requires individuals to exhaust administrative remedies before filing suit in federal district court. 29 U.S.C. § 794a(a)(1); *see Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006). As this court has explained, "the required recourse to administrative review has special prominence with respect to the . . . claims of federal employees." *Kizas v. Webster*, 707 F.2d 524, 543 (D.C. Cir. 1983).

Whereas the exhaustion requirement for discrimination claims against private employers involves the filing of a charge with the Equal Employment Opportunity Commission (EEOC), claims against a federal agency—such as the Rehabilitation Act claims in this case—must initially be brought before the employing agency itself. *See id.* at 543-44. The obligation to initiate one's claim in the government agency charged with discrimination is "part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment." *Id.* (internal quotation marks omitted). The requirement of "initial recourse to [an] agency" manifests a "carefully structured scheme for resolving charges of discrimination within federal agencies" when possible, limiting the need for resort to judicial proceedings. *See id.* at 546. And because the "requirement that the aggrieved employee first seek an administrative resolution" before the employing government agency constitutes a precondition to bringing "suit against the sovereign," it, like any condition on the waiver of sovereign immunity, commands strict adherence. *See McIntosh v. Weinberger*, 810 F.2d 1411,

1424-25 (8th Cir. 1987), *vacated on other grounds and remanded sub nom. Turner v. McIntosh*, 487 U.S. 1212 (1988); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) (applying obligation to "strictly construe[]" any "waiver of the Government's sovereign immunity" to claims under the Rehabilitation Act); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990).

The relevant administrative remedies for discrimination claims against federal agencies—including under the Rehabilitation Act—contain distinct procedures for individual actions and class actions. *See* 29 C.F.R. § 1614.106 ("Individual complaints"); *id.* § 1614.204 ("Class complaints"). Here, thirty-eight plaintiffs appeal the rejection of their Rehabilitation Act claims for failure to exhaust those administrative remedies. None of the appealing plaintiffs properly exhausted administrative remedies for their individual claims. Nor did any plaintiff attempt to invoke the administrative procedure for class claims. Five former officers who were plaintiffs at the time of the district court's rulings on exhaustion, however, did timely exhaust administrative remedies for their individual claims.

The plaintiffs appealing dismissal of their Rehabilitation Act claims argue that, although none of them personally exhausted administrative remedies for their individual claims, the doctrine of "vicarious exhaustion" should permit them to proceed with their suits. That doctrine functions as an exception to the ordinary requirement that each plaintiff must have exhausted administrative remedies. It allows an individual to treat her claim as having been exhausted, notwithstanding her failure personally to have done so, if her claim and that of a person who did personally exhaust "are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate [administrative claims]."

*Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C. Cir. 1981). Here, the appealing plaintiffs contend that vicarious exhaustion enables them to piggyback on the administrative complaints of the five officers who properly exhausted individual remedies. We are unpersuaded.

In *Spinelli v. Goss*, we held that a district court lacks jurisdiction over a Rehabilitation Act claim if "there was no administrative complaint [filed] and thus no final disposition of one." 446 F.3d at 162. Here, the district court understood *Spinelli* to establish that the Rehabilitation Act's exhaustion requirement is jurisdictional and to thus bar application of vicarious exhaustion principles for claims under that Act. *Cf. Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009) ("Because we hold that the [Congressional Accountability Act]'s counseling and mediation requirements are jurisdictional, the district court . . . was not empowered to apply the equitable doctrine of vicarious exhaustion to excuse compliance with those requirements."). The plaintiffs contend that *Spinelli*, which did not address the doctrine of vicarious exhaustion, does not foreclose application of the doctrine here. We need not resolve that issue. Instead, we affirm the district court's dismissal of plaintiffs' Rehabilitation Act claims for a different reason: vicarious exhaustion is unavailable in the circumstances of this case unless some individual exhausted the administrative procedure for a *class* complaint.

A review of the EEOC's class administrative procedures provides the background for understanding the unavailability of vicarious exhaustion in this case. The Civil Service Commission, whose equal opportunity enforcement powers were later transferred to the EEOC, promulgated rules governing class administrative remedies in cases of discrimination brought against federal employers. *See* 29

C.F.R. § 1614.204. (There is no such class administrative remedy for discrimination claims against private employers.) A class administrative complaint against a federal employer must allege numerosity, commonality, typicality, and adequate representation—mirroring the requirements for class actions under Federal Rule of Civil Procedure 23. *Compare id.* § 1614.204(a)(2), *with* Fed. R. Civ. Proc. 23. The complaint must also identify the policy or practice adversely affecting the class. 29 C.F.R. § 1614.204(c)(1). An administrative judge determines whether to certify the class, and, following any grant of certification, supervises discovery and adjudicates the complaint. *Id.* § 1614.204(b), (f). After a final action on the class complaint, or after passage of 180 days after filing without a final action, the class agent (or another individual who sought relief pursuant to the class administrative complaint) can bring an action in district court. *See id.* § 1614.407.

Those class administrative procedures "create[] a detailed scheme markedly different than the administrative mechanism for addressing individual discrimination claims." *Gulley v. Orr*, 905 F.2d 1383, 1384 (10th Cir. 1990) (per curiam); *compare* 29 C.F.R. § 1614.106, *with* 29 C.F.R. § 1614.204. The class procedures give the federal agency an "opportunity to discover and correct discriminatory practices that may amount to class-wide discrimination." *Patton v. Brown*, 95 F.R.D. 205, 208 (E.D. Pa. 1982). Relatedly, the class mechanism affords the affected government agency notice of the potential scale of a multiple-employee complaint, promoting efficient administration of system-wide relief. *See McIntosh*, 810 F.2d at 1425 ("If the agency is to attempt to resolve the [class] grievance, and if a usable record is to be assembled, the nature of the complaint must be defined."). An agency's awareness of the scope of a dispute could also make resolution in the administrative phase more likely,

potentially affording relief to a larger class of affected individuals and alleviating the need for resort to judicial proceedings. *Cf. Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990) ("[T]here must be some indication that the grievance affects [a large group] . . . . [to] alert[] the EEOC that more is alleged than an isolated act of discrimination and afford[] sufficient notice to the employer to explore conciliation with the affected group."); *McIntosh*, 810 F.2d at 1425 ("An administrative proceeding . . . based on guesswork by the [government] is likely to be a waste of time for all concerned.").

"In light of the distinct administrative mechanism created specifically to address class claims of discrimination," courts have generally held that "exhaustion of individual administrative remedies is insufficient to commence a class action in federal court." *Gulley*, 905 F.2d at 1385 (collecting cases). Rather, to bring a class action, there must have been an exhaustion of "class administrative remedies." *Id.*; *see McIntosh*, 810 F.2d at 1424-25. Allowing a class action to proceed in federal court even if there has been no exhaustion of class administrative procedures would undermine the important objectives served by bringing a class claim before the government agency in an effort to attain class-wide, administrative resolution. Here, however, no plaintiff invoked (much less exhausted) the class administrative process. The district court, therefore, was required to dismiss the class claims under the Rehabilitation Act for failure to exhaust administrative remedies.

The same result must also obtain with respect to the individual Rehabilitation Act claims of those plaintiffs who failed properly to exhaust. Forty-five plaintiffs asserted individual claims, 4th Am. Compl. ¶ 92, and those individual claims involve precisely the same programmatic allegations as the claims asserted on behalf of the class, *see id.* ¶¶ 10, 16,

93-97. The lion's share of the plaintiffs—all but five—failed properly to exhaust their individual claims before the agency. The government therefore was not made aware during the administrative phase that numerous individuals sought to press similar claims. Any plaintiff could have invoked and exhausted class administrative proceedings, in which event the Marshals Service would have been "given the opportunity to discover and correct discriminatory practices that may amount to class-wide discrimination." *Patton*, 95 F.R.D. at 208. No plaintiff did so, however, frustrating the objective of the class administrative process to enable the fashioning of program-wide relief under the coordination of the affected agency.

Vicarious exhaustion allows a plaintiff to overcome his or her own failure to satisfy the statutory requirement to exhaust administrative remedies if "it can fairly be said that" exhaustion would serve "no conciliatory purpose." *Foster*, 655 F.2d at 1322. That cannot be said about the failure to exhaust the class administrative process here. A fundamental object of the class administrative mechanism is to promote a government agency's awareness of, and ability to resolve, an allegedly program-wide problem. Those important objectives are no less salient when more than forty plaintiffs attempt to bring unexhausted individual actions challenging a common practice than when they bring a class action challenging the same practice. And we are aware of no reason to suppose that the class administrative mechanism would have been unavailable in this case or futile to pursue. To the contrary, the plaintiffs sought to bring class claims in district court conditioned on satisfying essentially the same criteria—such as numerosity, commonality, and typicality—that would have attended a class administrative complaint. *Compare* 29 C.F.R. § 1614.204(a)(2), *with* Fed. R. Civ. Proc. 23. Nor is there any question that group litigation was intended by the time of

administrative exhaustion: the three named class plaintiffs who did exhaust did so less than three months before the motion for class certification was filed. And although the district court ultimately denied class certification on numerosity grounds, that was only because of the small number of plaintiffs whose Rehabilitation Act claims remained after rejection of the bulk of those claims for failure to exhaust individual administrative remedies.

Another court of appeals, albeit in an unpublished opinion, likewise disallowed vicarious exhaustion for a group of plaintiffs because of the failure of any individual to exhaust a class administrative complaint. *See Williams v. Henderson*, 129 Fed. Appx. 806, 812 (4th Cir. 2005) (per curiam). None of our previous decisions adopts a contrary approach. *Foster v. Gueory* allowed vicarious exhaustion, but that case involved a private employer, 655 F.2d at 1320, 1323, as to which the class administrative mechanism does not apply. In *Cook v. Boorstin*, 763 F.2d 1462 (D.C. Cir. 1985), we recognized vicarious exhaustion in the context of an action against the Library of Congress, but the plaintiffs in that case exhausted class administrative remedies before filing suit in federal district court. *See id.* at 1463, 1465. *Cook* aligns with today's decision because the exhaustion of class administrative remedies was deemed sufficient to allow the plaintiffs to proceed with their individual claims. *Accord Artis v. Bernanke*, 630 F.3d 1031, 1039 (D.C. Cir. 2011) (allowing vicarious exhaustion under regulations for Federal Reserve employees where named plaintiffs had submitted administrative class complaint).

Finally, in *De Medina v. Reinhardt*, 686 F.2d 997, 1012-13 (D.C. Cir. 1982), we allowed vicarious exhaustion for individual claims of discrimination against a federal agency. There had been no exhaustion of class administrative remedies in that case, but it is far from clear that the class

administrative procedures were available at the time of the discriminatory acts: those procedures came into being in 1977, *see* 42 Fed. Reg. 11,807 (Mar. 1, 1977), and the discrimination in *De Medina* dated back to 1974. At any rate, even if the class administrative mechanism was in theory available to the plaintiffs in *De Medina*, there is no indication that the court considered whether the plaintiffs should have exhausted a class administrative complaint. That is understandable, as the decision ultimately allowed only one plaintiff to piggyback on the complaint of one other plaintiff who had exhausted. *Id.* at 1012-13. It may well have been futile—e.g., for reasons of numerosity—for the two plaintiffs to initiate a class administrative complaint. In this case, by contrast, there is no reason to suppose that the class administrative mechanism would have been unavailable to the more than forty plaintiffs who jointly brought discrimination claims challenging a common practice.

The plaintiffs here seek to overcome their failure personally to exhaust their discrimination claims against the government by resort to the doctrine of vicarious exhaustion. We conclude that the plaintiffs cannot do so when there has been no exhaustion of a class administrative complaint, at least in the circumstances presented here—i.e., where there were no exceptional barriers to undertaking class exhaustion and class litigation was intended at the time exhaustion was or could have been pursued.

IV.

The plaintiffs finally contend that the district court abused its discretion when it denied leave to include the claims of twelve new plaintiffs under the Rehabilitation Act and ADA in the fifth amended complaint. We agree with the plaintiffs.

Federal Rule of Civil Procedure 15(a) allows a plaintiff to amend a complaint "once as a matter of course" within twenty-one days after service of a defendant's answer or Rule 12 motion. *See* Fed. R. Civ. P. 15(a)(1). Subsequent amendments are governed by Rule 15(a)(2) and require either "the opposing party's written consent or the court's leave." *Id.* 15(a)(2). "The court should freely give leave when justice so requires." *Id.*

The Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), elaborated on the expectation that courts would "freely give leave" under Rule 15(a)(2):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182. If the district court denies leave, it must state its reasons, as an "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

Here, the district court's primary reason for denying leave to add claims under the Rehabilitation Act and ADA was that the plaintiffs, in their motion, made express reference only to the addition of due process claims. The motion stated that the newly added plaintiffs "have the same claims as Plaintiffs . . . for the violation of their Fifth Amendment rights

to due process," but it made no comparably explicit reference to Rehabilitation Act or ADA claims. Pls.' Mot. for Leave 2. The motion otherwise made apparent, however, that the new plaintiffs sought to bring discrimination claims under those statutes as well. It explained that the new plaintiffs "timely filed administrative complaints and exhausted . . . administrative remedies," *id.* at 3, a statement with relevance only to the discrimination claims (given the absence of any exhaustion requirement for the due process claims). It also explained that there would have been no need to seek leave for new plaintiffs to be added to the case "had the Motion for Class Certification been granted," citing the Supreme Court's decision in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), for the proposition that "employees with discrimination claims [as] part of [a] putative class have their statutes of limitations tolled until the court issues a decision on class certification." Pls.' Mot. for Leave 3. That explanation likewise pertained solely to the Rehabilitation Act and ADA claims, the only ones for which the plaintiffs had sought to certify a class.

It is no surprise, then, that the proposed fifth amended complaint attached to the motion expressly included claims under the Rehabilitation Act and ADA, an unambiguous indication that the new plaintiffs sought to bring those claims. The Marshals Service and the security companies, in their opposition to the plaintiffs' motion, correspondingly understood the motion to seek leave to add discrimination claims, and responded accordingly. While the district court observed that granting leave to add those claims would "deprive Defendants of a full opportunity to state their objections and would invite manipulation of the amendment process by future litigants," *Clark*, No. 02-1484, slip op. at 3 (D.D.C. Sept. 20, 2007), the defendants understood that the

plaintiffs sought to bring those claims and made responsive arguments in their opposition filing.

When it denied reconsideration, the district court stated that "the Defendants will be prejudiced if the new Plaintiffs' disability discrimination claims are added to the case at this late date. There will be delay; there will be substantial expenses for expert witnesses and evaluations; and, of course, there will be additional attorneys' fees." *Clark*, No. 02-1484, slip op. at 3 (D.D.C. Jan. 22, 2009). It is not clear, however, that the court viewed those concerns as independently sufficient grounds for declining to grant leave. And the grant of leave to amend a complaint might often occasion some degree of delay and additional expense, but leave still should be "freely given" unless prejudice or delay is "undue," *Foman*, 371 U.S. at 182, a finding not made by the district court here. Nor is this a case in which the plaintiffs, for instance, "attempted to raise an entirely new issue by amendment . . . after the parties had conducted extensive discovery, and after the district court had granted a summary judgment motion." *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987). The plaintiffs already in the case had raised substantially the same discrimination claims, no summary judgment motion had been granted, and no discovery had taken place as to the ADA claims against the security companies. At the time the new plaintiffs sought to add their claims, moreover, the district court had just denied class certification, making it necessary for the new plaintiffs to assert their own individual discrimination claims in order to obtain relief.

The district court has endured a multitude of motions and amendments to the pleadings in this case over the course of more than a decade. We are sympathetic to the court's understandable interest in efficiently administering the

litigation. And considerable confusion could have been avoided if the plaintiffs had been more clear in their motion to file a fifth amended complaint. The court, however, granted leave to file that complaint, and thereby to add new plaintiffs asserting claims under the Due Process Clause. The motion and the attached proposed complaint, read together, adequately notified the defendants and the court of the desire of the new plaintiffs also to add claims under the Rehabilitation Act and the ADA, and the defendants so understood. In those circumstances, we find that the court should have granted leave to include those claims.

* * * * *

We affirm the district court's grant of summary judgment to the defendants on the due process claims, as well as its grant of judgment on the pleadings to the defendants on the Rehabilitation Act claims for failure to exhaust. We reverse the district court's denial of leave to amend to add the discrimination claims, however, and we remand the case for proceedings consistent with this opinion.

*So ordered.*